**BAKER & HOSTETLER LLP**
Matthew C. Kane, SBN 171829
*mkane@bakerlaw.com*
Amy E. Beverlin, SBN 284745
*abeverlin@bakerlaw.com*
Kerri H. Sakaue, SBN 301043
*ksakaue@bakerlaw.com*
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859

**BAKER & HOSTETLER LLP**
Sylvia J. Kim, SBN 258363
*sjkim@bakerlaw.com*
Transamerica Pyramid
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile: 415.659.2601

*Attorneys for Defendant*
MCLANE/SUNEAST, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

EDWIN TRONCOSO, an individual,

Plaintiff,

v.

MCLANE/SUNEAST, INC., a Texas corporation, VICKY DOE, an individual, JOSE ALVARADO, an individual, and DOES 1 through 100, inclusive,

Defendants.

Case No.: 1:24-at-00383

[Merced County Superior Court, Case No. 24CV-01427]

**DEFENDANT MCLANE/SUNEAST, INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

Action Filed:   April 5, 2024

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant McLane/Suneast, Inc. ("McLane"), by and through its undersigned counsel, hereby remove the above-entitled action currently pending in the Superior Court of the State of California in and for the County of Merced (the "State Court") to the United States District Court for the Eastern District of California on the grounds that this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. In support of this Notice of Removal, McLane avers as follows:

## STATE COURT ACTION

1.     On or about April 5, 2024, Plaintiff Edwin Troncoso ("Plaintiff") filed a Complaint in the State Court, commencing this civil action against Defendants in a case styled *Edwin Troncoso, an individual v. McLane/Suneast, Inc., a Texas corporation, Vicky Doe[1], an individual, Jose Alvarado, an individual, and Does 1 through 100, inclusive*, Case No. 24CV-01427 (the "State Court Action"). A true and correct copy of the Complaint is attached hereto as **Exhibit A** (the "Complaint").

2.     On April 12, 2024, McLane's registered agent for service of process was personally served with the Complaint and Summons in the State Court Action. A true and correct copy of the Summons on the Complaint that was served on McLane is attached hereto as **Exhibit B**.

3.     McLane was also served with the following documents from the State Court Action, true and correct copies of which are attached hereto as the Exhibits identified below:

| Exhibit | Document |
| --- | --- |
| **C** | Civil Case Cover Sheet |
| **D** | Notice of Case Management Conference; Notice |

[1] Plaintiff filed suit against "Vicky Doe" whose last name was allegedly unknown to Plaintiff at the time of filing. McLane is informed and believes that "Vicky Doe" refers to "Vicky Coalson."

2

of Inclusion in Delay Reduction Program

**E**        Alternate Dispute Resolution (ADR) Information Guide

4.    McLane is informed and believes that the following additional document is also on file in the State Court Action, a true and correct copy of which is attached hereto as the Exhibit identified below:

**Exhibit**        **Document**

**F**        Proof of Service of Summons on McLane

5.    McLane is informed and believes that there has been no service of process upon Defendants Vicky Coalson and Jose Alvarado, and that there has been no service of process upon Defendants Does 1 through 100, which are fictitious defendants to be disregarded for the purposes of this removal. *See* 28 U.S.C. § 1441(a).

6.    In accordance with 28 U.S.C. § 1446(d), McLane will provide contemporaneous written notice of this Notice of Removal to all adverse parties and to the Clerk of the State Court.

## TIMELINESS OF REMOVAL

7.    This case has not been previously removed to federal court.

8.    The Ninth Circuit has held and clarified that removal is timely at any time so long as (1) the face of the complaint does not plainly allege all elements needed for jurisdiction, and (2) plaintiff has not served some other "paper" that concedes all elements needed for jurisdiction. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125-26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) and (b)(3) begins

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

to run against the defendant").[2]

9.      Here, the Complaint does not plainly allege all elements needed for removal under traditional diversity jurisdiction, and Plaintiff has not served some other "paper" that concedes all elements needed for such removal.  Therefore, this removal is timely pursuant to 28 U.S.C. § 1446(b)(3) and Ninth Circuit authority.

## REMOVAL JURISDICTION – DIVERSITY

10.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(a), 28 U.S.C. § 1441(b), and all other applicable bases for removal.  As required by 28 U.S.C. § 1441, McLane seeks to remove this case to the United States District Court for the Eastern District of California, which is the District Court embracing the place where the State Court Action was filed.

11.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), and it is an action that may be removed to this Court by McLane because: (1) there is complete diversity of citizenship between Plaintiff, on the one hand, and Defendants McLane and Vicky Coalson, on the other hand; (2) Jose Alvarado ("Sham Defendant Alvarado") is a fraudulently joined sham and, therefore, his citizenship is disregarded for purposes of this removal; and (3) the amount-in-controversy exceeds $75,000, exclusive of interest and costs.

## CITIZENSHIP OF THE PARTIES

12.      **Plaintiff's Citizenship.** The Complaint alleges that Plaintiff "[a]t all times [relevant], was an individual and a resident of the State of California," and McLane is informed and believes that Plaintiff intends to indefinitely remain living continuously in California.  *See* Exh. A (Complaint), ¶ 1.  As such, for purposes of diversity jurisdiction, Plaintiff is a citizen of California.  *See, e.g.*, 28 U.S.C. §

[2] *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (reaffirming *Roth*) ("We also recently held in *Roth v. CHA Hollywood Med. Ctr., L.P.,* that the two 30-day periods are not the exclusive periods for removal…. In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *Lew v. Moss*, 797 F.2d 747, 751- 52 (9th Cir. 1986) (party domiciled in state of party's address).

13. **Defendant McLane's Citizenship.**  McLane is a Texas corporation with its corporate headquarters and principal place of business in Temple, Texas. *See* California Secretary of State Business Search at https://bizfileonline.sos.ca.gov/search/business (Corporation Name Searched: "McLane/Suneast, Inc."). At its corporate headquarters in Texas, McLane's officers direct, control, and coordinate its activities, and the majority of its executive and administrative functions are performed there. Thus, McLane is not a citizen of California, but rather, was and is a citizen of Texas. *See* 28 U.S.C. § 1332(c)(1) (for diversity purposes, "[a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"); *see also Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010) (the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities," and in practice, the principal place of business "should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination").

14. **Defendant Vicky Coalson's Citizenship.**  The Complaint alleges that "Vicky [Coalson], is an individual residing in the State of Washington at all relevant times in this action." McLane is informed and believes that Defendant Vicky Coalson intends to indefinitely remain living continuously in Washington. *See* Exh. A, ¶ 3. As such, for purposes of diversity jurisdiction, Defendant Coalson is a citizen of Washington. *See, e.g.*, 28 U.S.C. § 1332(a)(1) and *Mondragon* v. *Capital one Auto Finance*, 736 F.3d 880, 885-86 (9th Cir. 2013).

15. **Fraudulently Joined Individual Sham Defendant Alvarado.**  In an improper attempt to destroy diversity of citizenship, Plaintiff has fraudulently joined

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Sham Defendant Alvarado because he resides in California. However, a fraudulently joined defendant will not defeat removal on diversity grounds. *See Isaacs v. Broido*, 258 F.App'x 874, 876-77 (9th Cir. Dec. 4, 2009); *Ritchey v Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

16. Plaintiff asserts only a single claim against Sham Defendant Alvarado —a claim for intentional infliction of emotional distress ("IIED") based on the following alleged conduct by Sham Defendant Alvarado:

> ➢ Sham Defendant Alvarado stepped in and authorized Plaintiff to take a reset after Defendant Vicky Coalson allegedly assigned him more local routes but allegedly failed to stop Vicky's "campaign of harassment" against Plaintiff insofar as "Vicky continued trying to assign loads to Plaintiff and became angry when he informed her that Alvarado had approved Plaintiff to decline additional loads." *See* Exh. A, ¶ 12;

> ➢ Sham Defendant Alvarado "informed Plaintiff that he could not choose the routes that he would drive because he was not officially cleared to return to work." *Id.*, ¶ 17;

> ➢ Sham Defendant Alvarado "informed [Plaintiff] that he was being placed on a suspension" and "refused to provide a reason for the suspension despite Plaintiff asking him why." *Id.*, ¶ 18; and

> ➢ Sham Defendant Alvarado "called Plaintiff and asked him to come in to speak with Branch Manager Brian Doe. Both Brian and Alvarado were in the office and told Plaintiff that he was terminated. They provided no reason for Plaintiff's termination and only handed him his last check and escorted him off the premises." *Id.*

17. However, the foregoing conduct Plaintiff attributes to Sham Defendant Alvarado is insufficient **as a matter of law** to state a claim for IIED against Sham Defendant Alvarado for *at least* two reasons.

18. *First*, Plaintiff's IIED claim is barred because such a claim is subject to the exclusive remedy provision of the Workers' Compensation Act, Cal. Labor Code § 3602, et seq. ("WCA"). *See Shoemaker v. Myers*, 52 Cal.3d 1, 25 (1990). Specifically, when the injury "occurred at the worksite, in the normal course of the employer-employee relationship ... workers' compensation is [a] [plaintiff's] exclusive remedy for any injury that may have resulted." *Miklosy v. Regents of Univ. of California,* 44 Cal.4th 876, 902 (2008). For example, the exclusivity of the WCA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

bars claims of emotional distress in employment actions involving termination, demotions, and criticisms of work practices. *See Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 159-60 (1987) (holding that "[Plaintiff] may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance."); *Livitsanos v. Sup. Ct.*, 2 Cal.4th 744, 754 (1992); *Shoemaker*, 52 Cal.3d at 25 (1990). The alleged conduct here amounts to nothing more that managerial decisions by Mr. Alvarado, and is "a normal part of the employment relationship." *Shoemaker*, 52 Cal.3d at 25. "Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions." *Id*.

19. *Second*, Plaintiff's claim for IIED against Mr. Alvarado also fails for the separate and independent reason that Plaintiff has not pled—and cannot plead—facts to support the elements necessary to state a cause of action for IIED. The elements of a cause of action of IIED include (1) extreme and outrageous conduct by defendant, (2) intent to cause emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress. *See Agarwal v. Johnson*, 43 Cal.3d 148, 149 (1979); *Alcorn v. Anbro Eng., Inc.*, 2 Cal.3d 493, 497-99 (1970). Plaintiff has failed to allege facts sufficient to support elements one, two and four. Here, the Complaint is devoid of allegations, comments or conduct by Sham Defendant Alvarado that would ostensibly qualify as extreme and outrageous conduct intended to cause severe emotional distress.

20. To recover for IIED, an employer's actions must be shown to be so "extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Alcorn*, 2 Cal.3d at 499, n. 5. Disciplinary actions, including termination, however, do not constitute outrageous conduct, even if issued without cause, or if intentional or malicious. *See Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1984) (applying California law); *Trerice v. Blue Cross of Calif.*, 209 Cal. App.3d 878, 883 (1989); *Shoemaker*, 52 Cal.3d at 25.  In *Hughes v. Pair*, 46 Cal.4th 1035 (2009), the California Supreme Court stated: "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Id*. at 1051 (int. quot. marks omitted; cit. omitted); *see also, e.g.*, *Mitchell v. Corr. Corp. of Am.*, 2010 WL 3168412, at *6 (S.D. Cal. Aug. 9, 2010) (citing examples of personnel management actions that do not constitute extreme and outrageous conduct).   Thus, "[a] simple pleading of personnel management activity is insufficient to support claim of [IIED], even if improper motivation is alleged" because "[m]anaging personnel is not outrageous conduct beyond bounds of human decency, but rather conduct essential to welfare and prosperity of society."  *Janken v. GM Hughes Elecs.*, 46 Cal.App.4th 55, 80 (1996).  In *Bradshaw v. Glatfelter Ins. Grp.*, 2009 WL 1438265, at *4 (E.D. Cal. May 20, 2009) (Wanger, J.), the court cited *Brooks v. City of Fremont*, 2008 WL 1994889, *8 (N.D. Cal. 2008), for the proposition that a supervisor's decision not to investigate or take action on a complaint of racial harassment qualifies as a "necessary personnel management action" that does not rise to the level of extreme and outrageous conduct as a matter of law.

21.     Here, at best, Plaintiff's allegations against Sham Defendant Alvarado amount to what he subjectively perceived to be unfair managerial decisions based on Sham Defendant Alvarado's alleged inaction responsive to Defendant Vicky Coalson assigning him loads, Sham Defendant Alvarado informing him that he was not allowed to select his routes and/or notifying him of his termination without communicating the underlying reason therefor.  But, Sham Defendant Alvarado's limited acts of managerial conduct do not rise to the high standard of "extreme" and "outrageous" as required to sustain a claim for IIED as a matter of law.  Furthermore, Plaintiff's Complaint contains no factual allegations suggesting that the conduct of which Plaintiff complains was calculated to cause Plaintiff severe emotional distress,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

or done with the knowledge of a substantial certainty that Plaintiff would suffer severe emotional injury, or that there was any causal connection between Sham Defendant Alvarado's purported conduct and his alleged emotional distress. *Christensen v. Sup. Ct.*, 54 Cal.3d 868, 903, 906 (1991). Therefore, the Complaint fails to state a claim for IIED against Sham Defendant Alvarado as a matter of law, and Sham Defendant Alvarado's citizenship must be disregarded for purposes of removal.

22. **Doe Defendants.** Defendants "Does 1 through 100" are fictitious Defendants whose citizenship is disregarded for purposes of removal. *See* 28 U.S.C. § 1441(a).

23. Accordingly, there is complete diversity between Plaintiff (California), on the one hand, and Defendants McLane and Vicky Coalson (Texas and Washington), on the other hand. *See* 28 U.S.C. § 1332.

## AMOUNT IN CONTROVERSY

24. Consistent with Fed. R. Civ. P. 8(a), a removing defendant's notice of removal need only contain plausible allegations to demonstrate the amount in controversy. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).[3] Evidentiary submissions are <u>**not**</u> required ***at the time of removal***. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (holding that defendant need not prove the amount in controversy in notice of removal). "Instead, evidence showing the amount in controversy is required '*only when* the plaintiff contests, or the court questions, the defendant's allegation.'" *Id.* (emph. added).[4] This standard applies to complaints like the Complaint in this action, which do not

[3] *See, e.g., Arias,* 936 F.3d at 924.("A district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied.").

[4] When a defendant seeks to remove an action to federal court on grounds of diversity jurisdiction, "the defendant's amount-in-controversy allegation should be accepted [as true] when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87; *Arias*, 936 F.3d at 927 ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'").

allege or seek a specific amount of damages:

> When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy … the Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal.

*Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197-98 (9th Cir. 2015) (citing *Dart Cherokee*).

25.   At the time of removal, the removing defendant's burden of establishing that the amount in controversy exceeds $75,000 is not daunting and does not require the defendant to do extensive research or prove up the plaintiff's damages. *See Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011).

26.   A plaintiff's complaint is a court's "first source of reference in determining the amount in controversy." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015).   In determining whether the amount-in-controversy exceeds $75,000, the court must presume that the plaintiff will prevail on each and every claim alleged in his complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002).   The ultimate inquiry asks what amount is put "in controversy" by the operative complaint, not what amount a court or jury might later determine to be the actual amount of damages, if any.   *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (defendants "are not stipulating to damages suffered" in a removal petition "but only estimating the damages that are in controversy," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal").[5]   The Court may also look beyond the complaint to determine whether

---

[5] *See also Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint"); *see also, e.g., Wilder v. Bank of Am.*, 2014 WL 6896116, *4 (C.D. Cal. Dec. 5, 2014) (determining amount in controversy requires that court assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the amount-in-controversy is met, if necessary. *See Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d at 690 (9th Cir. 2006).

27. The amount in controversy may include general and special compensatory damages. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1031 (N.D. Cal. 2002). Further, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Moreover, "a court **must** include *future* attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emph. added); *see also Chavez*, 888 F.3d at 414-15 ("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses *all* relief a court may grant on that complaint if the plaintiff is victorious.") (emph. added). The amount-in-controversy may also include punitive damages and emotional distress. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Kroske,* 432 F.3d at 980.

## PLAINTIFF'S COMPLAINT

28. Here, Plaintiff's Complaint asserts eleven (11) claims for: (1) sexual harassment in violation of the California Fair Employment and Housing Act ("FEHA"); (2) sex/gender discrimination in violation of the FEHA; (3) disability discrimination in violation of the FEHA; (4) failure to accommodate in violation of the FEHA; (5) failure to engage in the interactive process in violation of the FEHA;

claims made in the complaint because the ultimate inquiry is what amount is put "in controversy" by the complaint, not what a defendant will actually owe).

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

(6) retaliation in violation of the FEHA; (7) failure to investigate and prevent in violation of the FEHA; (8) CFRA retaliation/interference with CFRA-protected leave in violation of the FEHA; (9) violation of California Labor Code §1102.5; (10) wrongful termination in violation of public policy; and (11) intentional infliction of emotional distress. *See generally* Exh. A.

29. In his Complaint, Plaintiff alleges that "[he] has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits." *Id.*, ¶¶ 25, 86, & 94. Plaintiff's Complaint does not seek a specific dollar amount of recovery. Instead, the Complaint seeks, *among other things*: **(a)** general damages, *id.*, ¶ 87 & Prayer for Relief at ¶ 1; **(b)** special damages, *id.*, Prayer for Relief at ¶ 2; **(c)** punitive damages, *id.*, ¶¶ 28, 36, 43, 50, 57, 64, 74, 89, 95, 100 & Prayer for Relief at ¶ 3; **(d)** medical expenses, *id.*, ¶¶ 35, 42, 63 & Prayer for Relief at ¶ 4; **(e)** loss of earnings, *id.*, ¶¶ 34, 41, 50, 58, 67, 78, 95, & Prayer for Relief at ¶ 5; **(f)** attorneys' fees, *id.*, Prayer for Relief, ¶ 6; **(g)** prejudgment interest, *id.*, ¶¶ 42, 51, 59, 68, 79, 92 & Prayer for Relief at ¶ 7; **(h)** costs of suit incurred, *id.*, Prayer for Relief at ¶ 8; **(i)** declaratory relief, *id.* Prayer for Relief at ¶ 9; **(j)** injunctive relief, *id.*, Prayer for Relief at ¶ 10; and **(k)** such other relief as deemed just and proper, *id.*, Prayer for Relief at ¶ 11.

30. However, as discussed above, McLane may remove this action to federal court notwithstanding Plaintiff's failure to plead a specific dollar amount in controversy. To that end, this Notice only needs a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee*, 574 U.S. at 89; *see Arias*, 936 F.3d at 925 ("[A] notice of removal 'need not contain evidentiary submissions.' Instead, evidence showing the amount in controversy is required 'only when the plaintiff contests, or the court questions, the defendant's allegation.'"). Moreover, McLane's allegations regarding federal court jurisdiction, including the amount in controversy, must be accepted as true unless and until otherwise contested. *Accord Dart Cherokee*, 574 U.S. at 87.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

31.   As set forth below, and necessarily assuming that Plaintiff will prevail on each claim asserted in his Complaint, the damages sought establishes that the amount-in-controversy exceeds $75,000.[6]

**COMPENSATORY DAMAGES**

32.   In his Complaint, Plaintiff avers that he was sexually harassed, wrongfully terminated, discriminated against, and retaliated against on the basis of sex, disability and for reporting harassment. *See generally* Exh. A.  Plaintiff claims that "[a]s a proximate result of the aforesaid acts of Defendants, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits and the intangible loss of employment related opportunities in his field and damage to his professional reputation."  Exh. A. ¶¶ 25, 86 & 94.

33.   The amount in controversy is not limited to damages incurred prior to removal.  Instead, as the Ninth Circuit recently held in *Chavez v. JPMorgan Chase & Co.*, it includes lost wages incurred *after the time of removal* where, as here, they are expressly prayed for as relief in the operative pleading. *Chavez*, 888 F.3d at 417-18 (holding that lost wages incurred after removal were appropriately included in the amount in controversy since they were claimed at the time the case was removed by defendant).  Indeed, in determining the amount in controversy, it is appropriate to consider the amount of lost wages through the time of trial. *See, e.g.*, *Tiffany v. O'Reilly Auto. Stores, Inc.*, 2013 WL 4894307, at *3-4 (E.D. Cal. Sept. 11, 2013) (post-removal lost earnings through trial properly included in the amount in controversy).

---

[6] The amount in controversy calculations, as set forth below, assume *for purposes of removal only* that the allegations of Plaintiff's Complaint regarding his theories of liability are true but *without any type of express or implied admission that the conduct alleged in the Complaint occurred, that Plaintiff has suffered any damages, and that such liability in fact exists*. *See, e.g.*, *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ("Removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.").

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

34.     Here, Plaintiff alleges that he worked as a full-time driver for McLane and was terminated on or about April 21, 2023. *See* Exh. A, ¶¶ 9, 18. In the year before his termination, Plaintiff earned an average hourly rate of $39.49, or $1,579.60 per week in wages based on a 40-hour workweek, *exclusive of holiday pay, paid time off pay, and bonuses*.  To the extent Plaintiff prevails on any claim for lost wages from his alleged last day of work with Defendant (April 21, 2023) *through the removal of this action to federal court* (May 13, 2024), the "past lost wages" amount in controversy is not less than **$86,878.00** [approximately 55 weeks x $1,579.60/week], *exclusive of holiday pay, paid time off pay, and bonuses*.

35.     As shown, the jurisdictional requirement is easily met; however, this lost earnings estimate is actually *undercalculated* given the relief sought in the Complaint. As explained above, in determining the amount in controversy, it is appropriate to consider the amount of lost wages *through the time of trial.  See, e.g., Tiffany*, 2013 WL 4894307, at *3-4 (denying remand in employment discrimination action and accepting calculation of 108 weeks of post-removal lost wages through date of trial as appropriately included in amount-in-controversy calculation). Here, McLane *conservatively* estimates that this matter will conclude by the end of May 2025, or within 12 months of its removal from the State Court.[7]  Though no trial date has been set, courts have often found that one year from the date of removal is a "conservative estimate of the trial date" in employment cases. *See, e.g., Fisher v. HNTB Corp.*, 2018 WL 6323077, at *5 (C.D. Cal. Dec. 3, 2018).  Therefore, were McLane to include front pay lost wages damages *through trial*, the calculation of those damages would yield an ***additional*** amount in controversy of not less than **$82,139.20** (approximately 52 weeks [May 13, 2024 – May 13, 2025] x

---

[7] This 12-month estimate is conservative considering the 2023 U.S. Courts Caseload Statistics, which show that the median time interval for disposition of civil cases in this District, from filing through trial, is approximately ***68.3 months*** (or more than 208 weeks).  *See* Comparison of Districts Within the Ninth Circuit at URL: https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/12/31-3 (December 31, 2023).

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

$1,579.60/week).

36.    Consequently, and without considering other employment benefits (*i.e.*, paid sick leave, paid vacation, 401k, or health insurance contributions) to which Plaintiff would have been entitled had his employment with McLane not ended (which McLane reserves the right to include if its amount-in-controversy calculations are challenged), *or* front pay, which Plaintiff is also seeking and which is also appropriately included in the amount in controversy[8] (which Defendant reserves the right to include if its amount-in-controversy calculations are challenged) – it is "more likely than not" that the amount in controversy on Plaintiff's prayer for lost wages *alone* exceeds the jurisdictional minimum of $75,000.

### EMOTIONAL DISTRESS DAMAGES

37.    Plaintiff also seeks to recover "general damages" for "severe emotional distress, including stress, anxiety, anger, anguish, humiliation, loss of self-confidence, loss of self-esteem, feelings of hopelessness, feelings of betrayal, plus future expenses incurred in seeking medical treatment for the aforementioned symptoms."  Exh. A. ¶¶ 35, 42, 63, 72 & 99.

38.    Emotional distress damages are appropriately considered by the Court in determining whether the amount in controversy is satisfied for purposes of removal.  *Kroske*, 432 F.3d at 980; *see also, e.g., Ponce v. Medical Eyeglass Ctr., Inc.*, 2015 WL 4554336, at *4 (C.D. Cal. 2015); *Simmons*, 209 F.Supp.2d at 1034. "To establish the amount of emotional distress [damages] in controversy, a defendant may introduce evidence of jury verdicts in other cases." *Cain v. Hartford Life & Accident Ins. Co.*, 890 F.Supp.2d 1246, 1250 (C.D. Cal. 2012).  District courts in California recognize that "emotional distress damages in a successful employment discrimination case may be *substantial*." *Simmons,* 209 F.Supp.2d at

---

[8] Front pay is also properly considered in determining whether the $75,000 jurisdictional minimum is met. *See, e.g., Lamke v. Sunstate Equip. Co., LLC*, 319 F.Supp.2d 1029, 1034 (N.D. Cal. 2004) (denying remand motion and noting that the required amount in controversy was established without accounting for the specific value of plaintiff's prayer for front pay as a form of relief).

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1034 (emph. added); *Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447, 450 (S.D. Cal. 1995) (same). Indeed, emotional distress damages awards in wrongful termination actions and actions based on discrimination or retaliation in violation of the Fair Employment and Housing Act ("FEHA"), such as this one, frequently exceed the $75,000 amount in controversy **on their own**. *See, e.g.*, *Liemandt v. Mega RV Corp.*, 2011 WL 2912831 (Cal. Super. Ct. Feb. 4, 2011) ($385,0000 emotional distress award to plaintiff who alleged wrongful termination based on age upon return to work from medical leave).[9]

39. In *Kroske*, 432 F.3d at 980, the Ninth Circuit held that the trial court properly estimated $25,000 for emotional distress damages for purposes of satisfying the amount-in-controversy where the plaintiff's wage loss was $55,000. This calculation is also consistent with Plaintiff's own allegations where he seeks emotional distress damages of a "sum within the minimum jurisdiction of this Court." *See* Exh. A, ¶ 99. As shown in Exhibit C, Plaintiff filed the State Court Action as an "Unlimited Civil" matter, meaning that the "[a]mount demanded exceeds $25,000." Accordingly, even Plaintiff asserts that his purported emotional distress damages under his Eleventh Cause of Action at a minimum exceeds the $25,000 amount necessary to establish Unlimited Civil Case Superior Court jurisdiction under state law. *See* Cal. Code Civ. Proc. § 85(a). Accordingly, Defendant conservatively estimates that the minimum value of Plaintiff's emotional distress damages, if he were to prevail (as must be presumed for purposes of

---

[9] *See also, e.g.*, *Grodzik v. Calif. Conservation Corps.*, 2010 WL 2734467 (Cal. Super. Ct. June 15, 2010) ($100,000.00 emotional distress award to plaintiff on discrimination/failure to accommodate/retaliation claims); *Anderson v. Am. Airlines, Inc.*, 2008 Mealey's CA Jury Verdicts & Settlements 2008 ($1 million emotional distress award in federal FEHA discrimination action); *Kolas v. Access Bus. Grp.*, 2008 WL 496470 (Cal. Super. Ct. Jan. 14, 2008) ($200,000 emotional distress damages based on claim that plaintiff was fired based on his age and disability and in retaliation for filing a workers' compensation claim for herniated disc he sustained on the job); *Lemke v. BCI Coca-Cola of Los Angeles*, 2004 WL 5825304 (Cal. Super. Ct. Dec. 1, 2004) ($135,000 emotional distress damages awarded in wrongful termination action wherein plaintiff alleged failure to accommodate and retaliation for engaging in protected activity).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

removal), would be **at least $25,000.00** for purposes of calculating the reasonable amount in controversy in this action.

### PUNITIVE DAMAGES

40.    Plaintiff also seeks punitive damages against McLane. *See* Exh. A, ¶¶ 28, 36, 43, 50, 57, 64, 74, 89, 100, & Prayer for Relief at ¶ 3.

41.    The Ninth Circuit has held that punitive damages should be considered by a district court when determining the amount in controversy where they are recoverable as a matter of law. *See Gibson*, 261 F.3d at 945.  District courts routinely find that "the potential for large punitive damage awards in employment discrimination cases" satisfies the $75,000 amount in controversy without even considering other damages. *See Simmons*, 209 F.Supp.2d at 1033; *Chambers v. Penske Truck Leasing Corp.*, 2011 WL 1459155, *4 (E.D. Cal. Apr. 15, 2011) (Austin, M.J.) (denying remand in employment discrimination action and finding that amount in controversy was satisfied because "punitive damages in employment matters may be substantial"); *Haase v. Aerodynamics Inc.*, 2009 WL 3368519, *4 (E.D. Cal. Oct. 19, 2009) (England, J.) (acknowledging million-dollar punitive damages awards and denying remand in employment discrimination action, noting that "even a minimum award of punitive damages would satisfy the jurisdictional requirement").[10]    Furthermore, punitive damages verdicts on claims similar to Plaintiff's claims here typically far exceed the $75,000 jurisdictional minimum **on their own**.  *See, e.g.*, *Lopez v. Bimbo Bakeries USA, Inc.*, 2009 WL 1090375, *10-18 (Cal. Ct. App. Apr. 23, 2009) (affirming *$2 million* punitive damages award on plaintiff's FEHA discrimination/wrongful termination claims).

42.    In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 403, 425 (2003), the U.S. Supreme Court held that the longstanding historical practice of

---

[10] *See also* California Civil Jury Instruction (CACI) 2433 (2015) (quoting *Gantt v. Sentry Ins.*, 1 Cal.4th 1083, 1101 (1992) ("A tortious termination subjects the employer to 'liability for compensatory and punitive damages under normal tort principles.'")).

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

setting punitive damages at two, three, or four times the size of compensatory damages, while "not binding," is "instructive," and that "[s]ingle-digit multipliers are more likely to comport with due process." Here, Plaintiff is seeking compensatory general damages of *at least* $111,878.00 [$86,878.00 lost earnings + $25,000.00 emotional distress damages]. Conservatively utilizing a ratio of only 1:1, and basing any potential punitive damages award solely on the general damages at issue in this action, the potential punitive damages award in this action is approximately **$111,878.00**, which far exceeds the jurisdictional minimum of $75,000.00.

## STATUTORY ATTORNEYS' FEES

43.  Plaintiff also seeks attorneys' fees. *See* Exh. A, ¶¶ 27, 38, 44, 51, 58, 66, 73, 81 & Prayer for Relief at ¶ 6. FEHA provides for the recovery of statutory attorneys' fees by the prevailing party. *See, e.g.*, Cal. Gov't Code § 12965(b).

44.  In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *Fritsch*, 899 F.3d at 794; *see Galt*, 142 F.3d at 1155-56 ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *see also Arias*, 936 F.3d at 928 (finding district court erred in excluding prospective attorneys' fees from the amount in controversy). Indeed, "a court ***must*** include **future** attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emph. added); *see Arias*, 936 F.3d at 927-28 (noting that there is *no* split in authority as to whether attorneys' fees should be considered in the amount in controversy and reaffirming *Fritsch*'s holding that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met").

45.  The Court's own knowledge and experience in ruling on prevailing

plaintiffs' motions for attorneys' fees in discrimination and wrongful termination cases, like this action, should indicate that it is "more likely than not" that Plaintiff will be seeking an attorneys' fees award of **at least** **$75,000.00** if this case is litigated to judgment in a jury trial.[11] *See, e.g., Wysinger v. Auto. Club*, 157 Cal.App.4th 413, 430-432 (2007) (affirming $980,000 attorneys' fees award in FEHA discrimination action); *Lopez,* 2009 WL 1090375, at *18-21 (affirming trial court's award of $1 million in attorneys' fees on FEHA discrimination/wrongful termination claims); *see also, e.g.*, *Crawford v. DirecTV, Inc.*, 2010 WL 5383296 (Cal. Super. Ct. Sept. 29, 2010) (awarding approximately $160,000 in attorneys' fees in FEHA disability/wrongful termination action where the plaintiff's recovered damages were only $175,000); *Harris v. City of Santa Monica*, 2007 WL 4303742 (Cal. Super. Ct. Feb. 27, 2007) (awarding $401,188 in attorneys' fees where plaintiff prevailed in wrongful termination action).

46.     McLane reasonably estimates at this juncture that its own attorneys' fees to defend this action through a jury trial and post-trial motions will be well over **$75,000.00** based on its own past litigation experience.

### SUMMARY OF AMOUNT IN CONTROVERSY

47.     Based on the foregoing, and excluding for purposes of this removal any lost employment benefits and front pay to which Plaintiff claims to be entitled, the amount in controversy on Plaintiff's Complaint is not less than **$298,756.00**, which far exceeds the $75,000 jurisdictional threshold:

///

///

///

---

[11] Given the other damages at issue in this action, even a minimal award of attorneys' fees would cause the amount in controversy to exceed the jurisdictional minimum in this action. *See, e.g.*, *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) (using a "reasonable rate for employment cases" of $300 per hour (more than nine years ago) and "an appropriate and conservative estimate" of 100 hours to find that attorneys' fees in that case could "reasonably be expected to equal at least $30,000").

19

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Cause of Action / Claim | Amount in Controversy |
| --- | --- |
| Lost Wages (through removal only) | $86,878.00 |
| Emotional Distress Damages | $25,000.00 |
| Punitive Damages | $111,878.00 |
| Statutory Attorneys' Fees | $75,000.00 |
| **TOTAL AMOUNT IN CONTROVERSY:** | **$298,756.00** |

48.     Accordingly, because there is complete diversity of citizenship between Plaintiff and Defendants, and because Plaintiff seeks damages far in excess of the $75,000 jurisdictional threshold, McLane may remove this action pursuant to 28 U.S.C. §§ 1332 and 1441(b).   This action is one over which the United States District Courts have original jurisdiction by reason of diversity of citizenship of the parties.

49.     McLane expressly reserves the right to amend or supplement this Notice of Removal and the evidence in support thereof to the fullest extent permitted by applicable law to provide additional supporting evidence or include any additional sums sought in the Complaint, but not included herein, should any aspect of this removal and/or the information set forth herein be challenged. *See, e.g., Arias,* 936 F.3d at 925-29 (defendant must be provided "a fair opportunity to submit proof" where amount in controversy contested).

## VENUE

50.     Venue lies in this Court because the action is pending in this district and division. *See* 28 U.S.C. § 1441(a).

51.     Nothing in this Notice of Removal is intended or should be construed as any type of express or implied admission by McLane of any fact, of the validity or merits of any of Plaintiff's claims, causes of action, and allegations, or of any liability for the same, all of which is/are hereby expressly denied, or as any type of express or implied waiver or limitation of any of McLane's rights, claims, remedies,

20

and defenses in connection with this action, all of which are hereby expressly reserved.

WHEREFORE, the above-entitled action should be removed from the Superior Court of the State of California in and for the County of Merced to this United States District Court for the Eastern District of California.

Dated: May 13, 2024

**BAKER & HOSTETLER LLP**

By:   */s/ Sylvia J. Kim*
Matthew C. Kane
Sylvia J. Kim
Amy E. Beverlin
Kerri H. Sakaue

*Attorneys for Defendant*
MCLANE/SUNEAST, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 2700, Los Angeles, CA 90067.

On May 13, 2024, I served the following document described as **DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Jake D. Finkel, Esq.                      Attorneys for Plaintiff
Sheryl L. Marx, Esq.                      EDWIN TRONCOSO
**THE FINKEL FIRM**
3470 Wilshire Blvd., Suite 830
Los Angeles, California 90010
Telephone:  (213) 787-7411
Facsimile:  (323) 916-0521
E-mail:       jake@finkelfirm.com
                  sheryl@finkelfirm.com

☒     **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 13, 2024, at Los Angeles, CA.

*/s/ Tyler Patton*
Tyler Patton

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

22

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT