UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN TRONCOSO,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MCLANE/SUNEAST, INC., et al<br><br>　　　　　　Defendants. | No. 1:24-cv-00568-KES-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR REMAND<br><br>(ECF No. 14)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

　　　　Currently before the Court is Plaintiff Edwin Troncoso's motion to remand. A hearing on the motion was held on August 21, 2024. Counsel Sheryl Marx appeared by videoconference on behalf of Plaintiff. Counsel Sylvia Kim appeared by videoconference on behalf of Defendant McLane/Suneast, Inc. Having considered the arguments made at the hearing, the moving and opposition papers, as well as the Court's file, the Court recommends Plaintiff's motion be granted and the case be remanded to Merced County Superior Court.

**I.**

**BACKGROUND**

　　　　On April 5, 2024, Plaintiff filed this action in Merced County Superior Court against his employer, McLane/Suneast, Inc. ("McLane"); Vicky Doe ("Vicky"), a dispatcher at McLane and Plaintiff's supervisor; and Jose Alvarado, Plaintiff's direct supervisor at McLane. (ECF No. 1-1 ("Compl.") at ¶¶ 9, 97).) Plaintiff brings ten state employment and labor law claims against McLane and an eleventh claim for intentional infliction of emotional distress ("IIED") against all

1

1    Defendants, including Alvarado. (See Compl. generally.)

2    In 2021, Plaintiff began reporting to Vicky, a dispatcher at McLane. (Compl. ¶ 10.) Plaintiff alleges that Vicky gave Defendant unwanted attention. (Id. at ¶¶ 10-11.) After Plaintiff informed Vicky he was not interested, Vicky began retaliating against him. (Id. at ¶¶ 11-12.) Plaintiff reported Vicky's harassment to Alvarado; however, Plaintiff alleges Alvarado "failed to stop Vicky's campaign of harassment." (Id. at ¶ 12.) Instead, Alvarado authorized Plaintiff to take a reset and decline delivering additional loads assigned by Vicky. (Id.) Vicky's alleged harassment continued, and Plaintiff again complained to Alvarado, but no action was taken. (Id. at ¶ 14.) In December 2022, Plaintiff submitted a complaint to human resources. (Id. at ¶ 15.) Plaintiff notified Alvarado that he had made a complaint against Vicky. (Id.)

In January 2023, Plaintiff's home flooded, and he was placed on stress leave. (Id. at ¶ 16.) Plaintiff's doctor cleared him to return to work on April 10, 2023; however, Alvarado informed Plaintiff he could not choose his routes because he was not officially cleared to return. (Id. at ¶ 17.) On April 18, 2023, Alvarado informed Plaintiff that he was suspended. (Id.) On April 21, 2023, Alvarado asked Plaintiff to come in to speak with a branch manager. (Id.) Alvarado was in the office when Plaintiff was terminated without explanation. (Id.) Plaintiff alleges he was terminated due to discrimination on the basis of his disabilities and sex/gender, retaliation for requesting accommodations for his disabilities, and retaliation for complaining about sexual harassment. (Id. at ¶ 19.)

On May 13, 2024, McLane—the only Defendant that has been served in this matter—removed the action to this Court on the grounds that diversity jurisdiction exists because Plaintiff, McLane, and Vicky have complete diversity of citizenship; Alvarado is a fraudulently joined defendant and his citizenship is therefore disregarded for removal purposes; and the amount in controversy exceeds $75,000. (Def's Not. Removal ("NOR"), ECF No. 1 at ¶ 11.)

On June 6, 2024, Plaintiff filed the instant motion to remand this action, arguing the Court lacks jurisdiction because Alvarado is a properly named defendant and McLane fails to prove the amount in controversy exceeds $75,000. (Pl.'s Mot. Remand ("Mot."), ECF No. 14.) On June 26, 2024, McLane filed its opposition. (Def.'s Opp'n to Pl.'s Mot. ("Opp'n"), ECF No. 16.)

## II.

## LEGAL STANDARDS

A defendant may remove a matter to federal court if the district court would have original jurisdiction. See 28 U.S.C. § 1441(a); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal district courts have original jurisdiction over state law civil actions between citizens of different states in which the amount in controversy exceeds $75,000 exclusive of costs and interest. 28 U.S.C. § 1332(a)(1). Diversity jurisdiction, which is at issue here, requires the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted). A motion to remand is the proper procedure to challenge a removal based on lack of jurisdiction. 28 U.S.C. § 1447. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Id.

Ultimately, "[t]he removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." Cal. ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); see also Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper."). Thus, if there is any doubt as to the right of removal, a federal court must reject jurisdiction and remand the case to state court. Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); see also 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## III.

## DISCUSSION

In seeking remand, Plaintiff argues McLane has not met its burden to show that the amount in controversy exceeds $75,000. Plaintiff also avers Alvarado is a properly named Defendant because he was Plaintiff's direct supervisor and engaged in conduct that would hold him personally liable for IIED. Plaintiff does not dispute the timeliness of the removal notice or

other removal requirements. Plaintiff also does not contest that diversity of citizenship exists between Plaintiff, a California citizen; McLane, a Texas corporation with its principal place of business in Texas; and Vicky, a Washington citizen.

McLane argues Plaintiff merely lodges a facial attack on McLane's factual allegations regarding the amount in controversy and such allegations thus effectively stand unchallenged. McLane further argues that even if Plaintiff had lodged a factual challenge to McLane's allegations in the notice of removal, McLane has established by a preponderance of the evidence that the amount in controversy exceeds $75,000. Additionally, McLane argues that there is no possibility that Alvarado, a California citizen, can be held liable for IIED, given Plaintiff fails to plead sufficient facts to state an IIED claim, and the claim is subject to the exclusive remedy provision of the Workers' Compensation Act. McLane therefore avers that Alvarado is a sham defendant, and his California citizenship should be disregarded for removal purposes.

### A. Amount in Controversy

To establish diversity jurisdiction, the amount in controversy must "exceed[ ] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The amount in controversy is "simply an estimate of the total amount in dispute," and may include compensatory damages, punitive damages, and attorneys' fees when authorized by statute. Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010); see also Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648-49 (9th Cir. 2016). Critically, "the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019).

A defendant's notice of removal must include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 89 (2014). "Thereafter, the plaintiff can contest the amount in controversy by making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations." Harris v. KM Indus., Inc., 980 F.3d 694, 699 (9th Cir. 2020) (quoting Salter v. Quality Carriers, 974 F.3d 959, 964 (9th Cir. 2020)) see also Johnson v. Wal-Mart Assocs., Inc., No. CV227425MWFMRWX, 2023 WL 2713988, at *4 (C.D. Cal. Mar. 30, 2023) (finding the

1  standards set forth in Dart and subsequent cases in this circuit are not limited to CAFA removals).

2  A facial attack accepts the truth of the defendant's allegations but asserts such allegations "are insufficient on their face to invoke federal jurisdiction." Salter, 974 F.3d at 964 (quoting Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014)). In analyzing a facial attack, "the court, accepting the allegations as true and drawing all reasonable inferences in the defendant's favor, 'determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.' " Salter, 974 F.3d at 964 (quoting Leite, 749 F.3d at 1121). A factual attack, however, "contests the truth of the [defendant]'s factual allegations, usually by introducing evidence outside the pleadings." Salter, 974 F.3d at 964 (quoting Leite, 749 F.3d at 1121). When a plaintiff mounts a factual attack, the defendant "must support her jurisdictional allegations with 'competent proof'...under the same evidentiary standard that governs in the summary judgment context." Salter, 974 F.3d at 964 (quoting Leite, 749 F.3d at 1121).

Here, the parties acknowledge the amount in controversy in the instant action is not ascertainable from the complaint. The complaint states that Plaintiff seeks, inter alia, damages for loss of earnings, general damages for emotional distress, punitive damages, and attorneys' fees. (Compl. at 18.) McLane alleges Plaintiff's loss of earnings through the removal of the action amounts to at least $86,878 in past wage loss and $82,139.20 in future wage loss; potential damages for emotional distress amount to at least $35,000; potential punitive damages amount to approximately $121,878; and potential attorneys' fees exceed $75,000. (NOR ¶ 47.) The Court shall consider in turn whether the relief sought is sufficient to meet the jurisdictional requirement.

   1.   Compensatory Damages for Loss of Earnings

Plaintiff alleges in his complaint that he "has sustained and continues to sustain substantial losses of earnings and other employment benefits" as a result of Defendants' conduct. (Compl. ¶¶ 34, 41, 62, 71.) For purposes of determining the amount in controversy, Plaintiff's prayer for relief for lost earnings encompasses both past and future lost earnings. See Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 418 (9th Cir. 2018) (finding that where the plaintiff's complaint claimed wrongful termination resulting in lost future wages, those future wages were included in the amount in controversy); James v. Childtime Childcare, Inc., No. CIV. S-06-2676 DFL DA,

2007 WL 1589543, at *2 n.1 (E.D. Cal. June 1, 2007) (noting that while the court evaluates the amount in controversy at the time of removal, it may consider both past and future lost wages).

In its notice of removal, McLane alleges that in the year prior to his termination, Plaintiff earned an average hourly rate of $39.49, or $1,579.60 per week in wages based on a 40-hour workweek, exclusive of holiday pay, paid time off, and bonuses. (NOR ¶ 34.) McLane thus calculates Plaintiff's potential lost wages claim for the fifty-five weeks between Plaintiff's termination on April 21, 2023, through the date McLane removed the action to this Court on May 13, 2024, to be at least $86,878. (Id.) Because Plaintiff alleges he continues to lose earnings, McLane calculates Plaintiff's potential future wage loss to be $82,139.20 by estimating the action will go to trial within fifty-two weeks after removal, in May 2025. (Id. at ¶ 35.)

In his motion for remand, Plaintiff asserts, without explanation, that McLane's past wage loss estimate is "based on false speculation." (Mot. 5.)[1] Plaintiff also argues that that McLane "provides zero evidence" and "fails to show the amount in controversy is over $75,000 based on lost earnings." (Id. at 2, 5.) In opposition, McLane argues Plaintiff merely launches a facial attack and McLane is therefore not required to produce evidence that the amount in controversy exceeds $75,000. (Opp'n 19.) The Court agrees. While Plaintiff's "false speculation" assertion superficially appears to be a factual attack on the truth of McLane's allegations, Plaintiff fails to challenge McLane's wage loss allegations or show—"usually by introducing evidence outside the pleadings"—that the allegations are unreasonable or not supported by evidence. Salter, 974 F.3d at 964 (finding the plaintiff launched a facial attack where the plaintiff did not assert that the defendant misinterpreted the thrust of his complaint and did not offer any declaration or evidence that challenged the factual bases of the defendant's plausible allegations); see also Harris, 980 F.3d at 699 (explaining that a factual attack challenges the truth of the defendant's jurisdictional allegations "by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence"); Oddei v. Optum, Inc., No. 2:21-CV-03974-SBM-RWX, 2021 WL 3013914, at *2 (C.D. Cal. July 15, 2021) (determining the plaintiff presented only a facial

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1  challenge where she argued the defendant's calculations were supported by nothing more than
2  speculation and assumptions).

3       Because Plaintiff facially contests the allegations in the notice of removal, McLane must
4  only make a plausible allegation that the amount in controversy exceeds the jurisdictional
5  threshold.  The inherent nature of "plausible allegations" is that they rely on "reasonable
6  assumptions."  Salter, 974 F.3d at 965.  Thus, accepting the allegations in the notice of removal as
7  true and drawing all reasonable inferences in McLane's favor, the Court finds McLane's
8  allegations that Plaintiff's past wage loss amounts to $86,878 and his future wage loss amounts to
9  $82,139.20 is based upon reasonable assumptions of Plaintiff's hourly wage, average forty hour
10 work week, and the time between termination and removal.  The Courts further finds McLane's
11 May 2025 estimated trial date reasonable given the procedural posture of this action.  Thus, the
12 Court finds McLane plausibly alleges that Plaintiff's loss of earnings exceeds $75,000.

13      Even if the Court construed Plaintiff's assertion that McLane's damages allegations are
14 "based on false speculation" as a factual attack, his challenge fails.  In its opposition, McLane
15 submits a declaration of Carolyn Hahn, McLane's director of payroll administration.  (ECF No.
16 16-1.)  Ms. Hahn reports that in her capacity, she has access to and has reviewed Plaintiff's
17 personnel files, records, and data related to Plaintiff's payroll, wages, and benefits.  (Id. at ¶ 3).
18 Ms. Hahn proffers that the records "reflect or allow to be calculated, among other things, Mr.
19 Troncoso's date of employment, average hourly rates of pay, and average hours worked per week
20 during his employment."  (Id.)  Specifically, Ms. Hahn asserts that from April 2022 to April 2023,
21 Plaintiff earned an average rate of not less than $39.49 per hour during each pay period in which
22 he worked, exclusive of holiday pay, paid time off pay, and bonuses.  (Id. at ¶ 6.)  Ms. Hahn also
23 reports that Plaintiff worked an average of no less than 40 hours per week.  (Id. at ¶ 8.)  Plaintiff
24 did not file a reply brief, proffer evidence, or file objections to Ms. Hahn's declaration.

25      The Court finds Ms. Hahn's declaration to be sufficient evidentiary support that Plaintiff's
26 past wage loss claim spanning fifty-five weeks between termination and removal at $1,579.60 per
27 week amounts to $86,878.  See Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir.
28 2015) (noting a defendant's burden of showing the amount in controversy is met by a

preponderance of the evidence may be satisfied by submitting "affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal") (quotations and citation omitted). Accordingly, even if Plaintiff's motion could be construed as a factual attack, the Court finds McLane proves by a preponderance of the evidence that Plaintiff's past wage loss damages alone exceed $75,000.

### 2. Damages for Emotional Distress

McLane also points to Plaintiffs allegations in the complaint seeking damages for emotional distress "in [a] sum within the minimum jurisdiction of this Court." (Opp'n 19 (citing Compl. ¶ 99).) McLane argues Plaintiff is thus seeking emotional distress damages of at least $35,000, which, effective January 24, 2024, is the "minimum jurisdiction" amount in California unlimited civil cases. Cal. Code Civ. P. §§ 85, 88; (see Opp'n 26 n.8 (noting the notice of removal erroneously relied on the former California state court jurisdictional minimum in the amount of $25,000).) In its notice of removal, McLane also proffered jury verdicts in other discrimination, retaliation, and wrongful termination cases whereby emotional distress damage awards alone exceeded $75,000. (NOR ¶ 38 n.8); see Ochoa v. Costco Wholesale Corp., No. 2:22-CV-02287-KJM-AC, 2023 WL 2861906, at *2 (E.D. Cal. Apr. 10, 2023) (noting that a defendant may introduce evidence of jury verdicts from cases with analogous facts to establish probable emotional distress damages). Plaintiff does not challenge McLane's allegations regarding emotional distress damages in his motion to remand.

Despite its proffer of jury verdicts in the notice of removal, McLane only alleges that the emotional distress damages sought are in excess of $35,000. The Court finds McLane's allegation is reasonable based upon Plaintiff's allegation in his complaint that he seeks the minimum jurisdictional amount. See Johnson, 2023 WL 2713988, at *7 (determining without the consideration of analogous cases that at least $25,000.01 was in dispute for emotional damages based upon the plaintiff's allegation that such damages are "in an amount in excess of this court's minimal jurisdiction.") Accordingly, for the purpose of determining the amount in controversy, the Court finds McLane plausibly alleges that the emotional distress damages at stake exceed $35,000 based upon the allegations in Plaintiff's complaint.

8

3.     Punitive Damages

It is well established that punitive damages are part of the amount in controversy in a civil action." Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001). "Establishing the amount of punitive damages that may be included in the amount-in-controversy calculation requires submission of some evidence that the estimated ratio of punitive to economic/compensatory damages is reasonable." Rhinehart v. Genworth Life & Annuity Ins. Co., No. 1:18-CV-01391 LJO-SAB, 2019 WL 295770, at *6 (E.D. Cal. Jan. 23, 2019)  Other courts have considered jury verdicts in analogous cases as acceptable evidence in determining whether punitive damages may be considered in calculating the amount in controversy. Id.; see also Owuor v. Wal-Mart Assocs., Inc., No. 2:21-CV-02232 KJM JDP, 2022 WL 1658738, at *3 (E.D. Cal. May 25, 2022) (same).

Plaintiff seeks punitive damages for multiple FEHA claims in this action.  (Compl. ¶¶ 28, 36, 43, 50, 57, 64, 74, 89); see Ochoa, 2023 WL 2861906, at *2 (noting punitive damages are recoverable for FEHA violations). McLane estimates a potential punitive damages award to be at least $121,878.  (Opp'n 28.)  McLane's calculation is based upon a 1:1 ratio of punitive damages to past wages in the amount of $86,878 and emotional distress damages in the amount of $35,000. (Id.); see also Johnson, 2023 WL 2713988, at *7 (noting "district courts have concluded that using a 1:1 ratio between punitive and compensatory damages provides a reasonable, if not 'conservative,' estimate for assessing punitive damages for purposes of calculating the amount in controversy."). Other than a general statement that McLane's damages calculations "are based on false speculation," Plaintiff does not specifically challenge McLane's allegations regarding punitive damages.

McLane cites several verdicts in cases involving claims of retaliation and wrongful termination which resulted in punitive damage awards in excess of $75,000. See, e.g., Maxwell v. Beverly Enterprises-California, Inc. d/b/a Beverly Manor Convalescent Hosp., JVR No. 176523 (Cal. Super. Ct. Nov. 1995) (awarding $1.55 million in punitive damages on a retaliation and wrongful termination claim, which was later reduced to $500,000); Schell v. City of Los Angeles, 2 Trials Digest 5th 3 (C.D. Cal. June 21, 2001) (awarding $750,000 in punitive damages for retaliatory termination).  Although Plaintiff does not contest McLane's reliance on these

verdicts,[2] the Court notes that "to serve as benchmarks," the proffered cases need only be "sufficiently similar," not "perfectly analogous." Ochoa, 2023 WL 2861906, at *3; Simmons v. PCR Technology, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) ("The fact that the cited cases involved distinguishable facts is not dispositive...[because] the jury verdicts in [the cited] cases amply demonstrate the potential for large punitive damage awards in employment discrimination cases."). The Court finds the proffered verdicts are sufficiently similar to establish probable punitive damages in this comparable action for alleged retaliation and wrongful termination.

McLane requests that the Court consider a ratio of 1:1 to calculate punitive damages. (Opp'n 28.) Based upon the cases provided, the Court is satisfied a 1:1 ratio of punitive damages to compensatory damages is a reasonable and conservative estimate of punitive damages in calculating the amount in controversy.

4.  Statutory Attorneys' Fees

Plaintiff seeks attorneys' fees pursuant to California Government Code section 12965, which permits such an award to a prevailing party. (See Compl. ¶¶ 27, 38, 44, 66, 73.) "[W]here an underlying statute authorizes an award of attorneys' fees ... such fees may be included in the amount in controversy." Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998). Notably, "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." Fritsch v. Swift Transp. Co. of Arizona, LLC, 899 F.3d 785, 794 (9th Cir. 2018).

McLane estimates attorneys' fees in this matter will be at least $47,500. (Opp'n 29.) In support, McLane proffers a May 2023 declaration filed by Plaintiff's counsel in support of a motion for final approval of a class action settlement in a separate employment case which provides counsel's hourly rates in that action ranged from $475 per hour to $600 per hour. (Declaration of Sylvia J. Kim ("Kim Decl."), ECF No. 16 at 31 ¶¶ 2-4, Ex. A at ¶ 21).) McLane reaches the potential $47,500 in attorneys' fees by using Plaintiff's counsel's $475 rate and

---

[2] Plaintiff only contests McLane's proffered verdicts for compensatory damages by pointing to cases whereby the jury did not find for Plaintiff. (See Mot. 5.) This argument falls short given the amount in controversy is simply an estimate of the total amount at stake in this action, not a likelihood of the plaintiff's success or prospective assessment of defendant's liability. Lewis, 627 F.3d at 400 (citation omitted).

1  estimating "100 hours of conservatively estimated time that will be expected on work prosecuting
2  Plaintiff's claims." (Opp'n 29 (citing Sasso v. Noble Utah Long Beach, LLC, No. CV 14–
3  09154–AB (AJWx), 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) (noting "[r]ecent estimates
4  for the number of hours expended through trial for employment cases in this district have ranged
5  from 100 to 300 hours" and concluding 100 hours to be an "appropriate and conservative
6  estimate" for calculating statutory attorneys' fees)).) Plaintiff did not file a reply disputing
7  McLane's calculation, has not proffered contrary evidence, and did not file objections to the
8  proffered declaration. Accordingly, the Court finds $47,500 to be a reasonable and conservative
9  estimate of the attorneys' fees at stake in this action.

10              5.       Summary of Calculation of Amount in Controversy

11  The Court finds McLane has presented sufficient evidence demonstrating that there is
12  potential recovery of past wage loss in the amount of $86,878; potential recovery of future wage
13  loss in the amount of $82,139.20; potential emotional distress damages in excess of $35,000;
14  potential punitive damages in the amount of $121,878; and potential attorneys' fees in the amount
15  of $47,500 at stake in this action. Accordingly, the Court finds McLane has clearly met its burden
16  to show that the amount in controversy in this case exceeds $75,000.

17        **B.    Fraudulent Joinder**

18  An exception to the requirement of complete diversity exists where a defendant has been
19  fraudulently joined to defeat diversity. Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th
20  Cir. 2001). Where joinder is deemed fraudulent, the defendant's presence is ignored for the
21  purpose of determining diversity. Id. "If the plaintiff fails to state a cause of action against a
22  resident defendant, and the failure is obvious according to the settled rules of the state, the joinder
23  of the resident defendant is deemed fraudulent." Hamilton Materials, Inc. v. Dow Chem. Corp.,
24  494 F.3d 1203, 1206 (9th Cir. 2007) (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339
25  (9th Cir. 1987)). Joinder is not fraudulent so long as the plaintiff is entitled to relief against the
26  defendant on any theory. Sessions v. Chrysler Corp., 517 F.2d 759, 760-61 (9th Cir. 1975).

27  The claim of fraudulent joinder must be supported by clear and convincing evidence.
28  Hamilton, 494 F.3d at 1206. The defendant bears the "heavy burden" of overcoming the "strong

presumption against removal jurisdiction" and the "general presumption against fraudulent joinder." Hunter v. Philip Morris USA, 582 F.3d 1039, 1046 (9th Cir. 2009); Bertrand v. Aventis Pasteur Laboratories, Inc., 226 F. Supp. 2d 1206, 1212 (D. Ariz. 2002) ("The party alleging fraudulent joinder bears the burden of proving the alleged fraud."). To meet this heavy burden, the defendant not only must show that the complaint fails to state a claim against the non-diverse defendant, but also "must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court…." McGrann v. AT&T Mobility Servs., LLC, No. 2:16-CV-00701 TLN KJN, 2016 WL 6205596, at *3 (E.D. Cal. Oct. 24, 2016) (citations and quotations omitted). "[I]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants[,] the court must remand." Barsell v. Urban Outfitters, Inc., No. CV 09-02604 MMM (RZx), 2009 WL 1916495, at *3 (C.D. Cal. July 1, 2009) (citation and quotations omitted).

In his sparse motion, Plaintiff states "Alvarado is a proper defendant," without any analysis of the allegations in his complaint. (Mot 2.) McLane—which holds the heavy burden to prove Plaintiff fraudulently joined Alvarado—argues that there is no possibility that Plaintiff can state a plausible claim for IIED against Alvarado. McLane also argues that Plaintiff's IIED claim against Alvarado is preempted by the exclusivity provisions of the Worker's Compensation Act. The Court shall address each argument in turn.

       1.      <u>Failure to State a Claim for IIED</u>

To state a claim for IIED, a plaintiff must show (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009) (citations and quotations omitted). For conduct to be "outrageous" it must be so "extreme as to exceed all bounds of that usually tolerated in a civilized community." Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982).

"Managing personnel is not outrageous conduct beyond the bounds of human decency….A simple pleading of personnel management activity is insufficient to support a claim

of intentional infliction of emotional distress, even if improper motivation is alleged." Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 80 (1996). Common personnel management actions include "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, [and] deciding who will be laid off…." Id. at 64-65. "[A] claim of intentional infliction of emotional distress [can be asserted, however,] '[w]here the behavior goes beyond the act of termination' or other management activity." Barsell, 2009 WL 1916495, at *6 (quoting Dagley v. Target Corp., Inc., No. CV 09-1330-VBF (AGRx), 2009 WL 910558, *3 (C.D. Cal. Mar. 31, 2009)).

Here, Plaintiff conclusorily alleges that "[a]s a supervisor, Defendant Alvarado acted outrageously towards Plaintiff in a reckless and/or intentional manner not tolerated by a civilized society, and made unlawful by statute, by engaging in the conduct against Plaintiff as alleged herein." (Compl. ¶ 97.) Plaintiff alleges conduct by Alvarado in 2022 related to Plaintiff's reports of Vicky's alleged harassment (id. ¶¶ 12, 14, 15) and that Alvarado played a role in Plaintiff's termination in 2023, which Plaintiff alleges was a result of discrimination on the basis of his disabilities and sex/gender, retaliation for requesting accommodations for his disabilities, and retaliation for complaining about sexual harassment (id. ¶¶ 17-19).

As to the allegations related to the 2022 reports of harassment, the Court is not persuaded by McLane's argument that Plaintiff's IIED claim fails because an individual supervisor is not personally liable for failing to take action to prevent the harassment of a subordinate employee. (Opp'n 15.) McLane cites only Fiol v. Doellstedt, 50 Cal. App. 4th 1318 (1996) in support. However, an IIED claim was not at issue in Fiol; rather, the plaintiff sued his supervisor under FEHA for failure to prevent harassment by another employee. Id. at 1322 (holding "a nonharassing supervisor, who fails to take action to prevent sexual harassment, is not personally liable for sexual harassment under [FEHA], as either an aider and abettor of the harasser or the employer, or as an agent of the employer."). Here, Plaintiff does not name Alvarado under his seventh cause of action for failure to investigate and prevent employees from engaging in of

1  intentional discrimination and harassment on the bases of sex, gender, and/or other protected
2  statuses in violation of FEHA, nor is there a separate claim that Alvarado aided and abetted
3  Vicky's alleged sexual harassment of Plaintiff in violation of FEHA.  (See Compl. ¶¶ 67-74.)
4  Rather, Plaintiff alleges a claim for IIED against Alvarado related to Alvarado's unspecified
5  outrageous conduct that allegedly caused Plaintiff severe emotional distress. (Compl. ¶¶ 97, 99.)

6  The Court finds that Plaintiff's allegations relating to Plaintiff's April 2023 termination appear to be common personnel management activities, including (1) Alvarado informing Plaintiff he could not choose the routes he would drive because he was not cleared to return to work following his medical leave (id. at ¶ 17); (2) Alvarado calling Plaintiff to inform him he was suspended (id. at ¶ 18); and (3) Alvarado calling Plaintiff to come in to speak with the branch manager and being present when Plaintiff was terminated (id.).  Alvarado's personnel management actions of informing Plaintiff that he was not cleared to work, suspending Plaintiff, and terminating Plaintiff—if it was Alvarado's decision to do so—cannot be considered so outrageous as to justify an IIED claim.  See Rocha v. Capstone Logistics, LLC, No. 17-8783 PSG (JCX), 2018 WL 839906, at *2 (C.D. Cal. Feb. 13, 2018) (citing Janken, 46 Cal. App. 4th at 80 (noting that "[i]f personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.")); but see Barsell, 2009 WL 1916495, at *6 (clarifying that Janken does not stand for the proposition that any decision affecting personnel management is not actionable under IIED regardless of motivation; rather, "courts considering [IIED] claims have clearly ruled that such claims can be brought where the distress is engendered by an employer's illegal discriminatory practices") (citations and quotations omitted).

22  Because Plaintiff alleges Alvarado engaged in adverse employment actions without any suggestion such conduct went beyond personnel management activity, the Court finds that the complaint falls short of stating a plausible claim for IIED against Alvarado.  However, "[t]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent. A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 549 (9th Cir. 2018).  Rather, "if there is a possibility that a state court would find that the complaint states

14

a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Hunter, 582 F.3d at 1046 (citation and quotation omitted). Further, in cases "in which defendants have argued that a supervisor's alleged conduct was not sufficiently outrageous to support an [IIED] claim, district courts applying the fraudulent joinder standard have generally found a non-fanciful possibility of liability, even where plaintiff's claim appeared 'relatively weak.' " Barsell, 2009 WL 1916495, at *7 (quotation and citation omitted). Courts have also granted motions to remand where the complaint failed to allege outrageous conduct because it was possible that the plaintiff could cure the deficiency by amendment. See Madayag v. McLane/Suneast, Inc., No. 1:16-CV-1082 AWI SAB, 2017 WL 30014, at *3 (E.D. Cal. Jan. 3, 2017) (collecting cases).

At the hearing, Plaintiff proffered additional allegations and clarification of his claim for IIED against Alvarado. Plaintiff notes he alleges that Alvarado knew of Vicky's harassment of Plaintiff because he complained to Alvarado both verbally and in writing. Then, after Plaintiff took a medical leave of absence, Plaintiff argues human resources purportedly cleared Plaintiff to work; however, Alvarado made a unilateral decision to falsely deny Plaintiff the right to bid on other jobs purportedly in retaliation for Plaintiff's reports of sexual harassment and for reasons related to Plaintiff's medical leave of absence for a disability. Alvarado then participated in Plaintiff's suspension and was purportedly a decision-maker in Plaintiff's termination for reasons rooted in intentional bias, retaliatory animus because of Plaintiff's complaints of sexual harassment, and related to Plaintiff's medical leave for a disability. Plaintiff contends that a supervisor lying to an employee about whether he could bid on jobs due to retaliatory animus goes beyond common personnel management activities and may constitute outrageous conduct. Plaintiff further contends that a supervisor's intentional failure to investigate, report, and prevent alleged harassment also exceeds common personnel management activities. Plaintiff argues these allegations can inferred from the allegations presently in the complaint; however, he also avers he can amend his complaint to state his claim more clearly if given the opportunity.

McLane argued at the hearing that such allegations are not contained within in the complaint. The Court agrees. For example, Plaintiff's complaint makes no allegation that human

15

resources cleared Plaintiff to work in April 2023, but Alvarado made a unilateral decision to tell Plaintiff that he could not bid on any jobs in a deceptive manner, thus denying Plaintiff's right to take a job in retaliation for Plaintiff's reports of sexual harassment by another supervisor and for discriminatory reasons related to his disability. Rather, Plaintiff's allegation related to returning to work merely states that "Plaintiff's doctor cleared him to return to work. Plaintiff gave [human resources] his doctor's note in person and was told to watch training videos. Alvarado then informed Plaintiff that he could not choose the routes that he would drive because he was not officially cleared to return to work. Plaintiff found this odd because Defendant's manual stated that staff who had gone on leave and returned to work could bid for a route." (Compl. ¶ 17.)

McLane also argued at the hearing that even if Plaintiff's proffered allegations were contained in the complaint, they constitute nothing more than ordinary personnel management activity. The Court is not persuaded. Given Plaintiff's proffer that he can amend his complaint to allege that Alvarado engaged in deceptive conduct that went beyond the act of termination or other management activity—such as violating Plaintiff's right to bid on jobs like other employees—the Court cannot find there is absolutely no possibility that Plaintiff can state an IIED claim against Alvarado. See, e.g., Dagley, 2009 WL 910558, *3 (reasoning that "if a plaintiff 'alleges conduct other than that inherent in terminating an employee,' such as violating a 'fundamental interest of the employee...in a deceptive manner that results in the plaintiff being denied rights granted to other employees,' then a claim for intentional infliction of emotional distress is possible against a supervisor") (citation omitted).

As evinced by Plaintiff's proffer at the hearing, it is possible Plaintiff can cure the deficiencies in his complaint to include additional facts and clarifying information to his threadbare recitation of an IIED claim against Alvarado. See Widder v. State Farm Fire & Cas. Co., No. CIV 2:10-2221 WBS, 2010 WL 4386698, at *3 (E.D. Cal. Oct. 28, 2010) (remanding where "plaintiff may be able to explain or expand on his allegations," and therefore the court could not conclude it was impossible or fanciful that plaintiff could establish liability). Indeed, if this was a Rule 12(b)(6) motion, this Court would be inclined to recommend granting Plaintiff leave to amend because Plaintiff has not yet amended his complaint and he has proffered

additional allegations to support his claim. By extension, if this action is remanded, the state court would also likely grant Plaintiff leave to amend. See Fry v. Navistar, Inc., No. 2-22-cv-01201 DAD JDP, 2022 WL 16748703, at *3 (E.D. Cal. Nov. 7, 2022) (citing Cal. Civ. Pro. Code § 472); see also Davis v. Prentiss Props. Ltd., 66 F. Supp. 2d 1112, 1115 (C.D. Cal. 1999) ("The fact that the party may lose or even the fact that the party will probably lose does not affect the party's right to present its claim, make its arguments, and receive a ruling from a court with proper jurisdiction."). The Court finds there is a non-fanciful possibility that Plaintiff may state an IIED claim against Alvarado upon amendment.

### 2. Workers' Compensation Act Preemption

The California Workers' Compensation Act ("WCA") is the exclusive remedy for employee actions alleging injuries against any other employee of the employer acting within the scope of his or her employment. Cal. Lab. Code § 3601(a). Accordingly, "claims for emotional distress caused by the employer's conduct that causes distress such as discharge, demotion, discipline or criticism" are generally "preempted by the [WCA], even when the employer's acts causing the distress are intentional or outrageous." De Peralta v. Fox Rest. Concepts, LLC, No. CV 17–7740 PSG (PLAx), 2018 WL 748287, at *3 (C.D. Cal. Feb. 6, 2018) (quoting Onelum v. Best Buy Stores L.P., 948 F. Supp. 2d 1048, 1054 (C.D. Cal. 2013)). However, an employee may maintain an IIED claim if the employer's conduct (1) contravenes fundamental public policy; or (2) exceeds the normal risks inherent in the employment relationship. Fry, 2022 WL 16748703, at *3 (citing Livitsanos v. Superior Court, 2 Cal. 4th 744, 754 (1992)); see also Fretland v. Cnty. of Humboldt, 69 Cal. App. 4th 1478 (1999) (holding that an emotional distress claim arising from work-related injury discrimination was not preempted); Barringer v. Wal-Mart Stores, Inc., No. SACV 22-01396-CJC (JDEx), 2022 WL 4356106, at *2 (C.D. Cal. Sept. 19, 2022) (finding that "discrimination and retaliation fall outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on discrimination and retaliation are not subject to workers' compensation exclusivity").

While Plaintiff alleges he was terminated by McLane due to discrimination on the basis of his disabilities and sex/gender, retaliation for requesting accommodations for his disabilities, and

17

retaliation for reporting sexual harassment (Compl. ¶ 19), the complaint lacks sufficient allegations that Alvarado's role in Plaintiff's termination fell outside the normal risks of employment relationship. However, given Plaintiff's explanation and proffer that the emotional distress he suffered was due to Alvarado's deceptive conduct in denying Plaintiff the right to bid on jobs allegedly in retaliation for reporting sexual harassment and/or due to disability discrimination, the Court cannot conclude the WCA precludes Plaintiff's IIED claim against Alvarado. See, e.g., Golda v. Residence Inn by Marriott, LLC, CV 18-8573-DMG (AFMx), 2019 WL 102375, at *3 (C.D. Cal. Jan. 4, 2019) (remanding where the plaintiff failed to "explicitly tie his IIED claim to retaliation," but "[i]f pled more carefully in a subsequent amended complaint, these theories could possibly support a cause of action for IIED that falls outside the normal employment relationship, and therefore outside of WCA preemption"); Barsdell, 2009 WL 1916495, at *4 ("Because this claim is based on allegations of disability discrimination, there is a non-fanciful possibility that the workers' compensation exclusivity provisions do not bar [the plaintiff's] claim against [her manager]"); De Peralta, 2018 WL 748287, at *4 (rejecting fraudulent joinder argument based on WCA preemption because assertions that Plaintiff was terminated because of an injury were "sufficient to remove the IIED claim from the WCA's preemptive effect because they imply disability discrimination."). Accordingly, the Court finds there is a non-fanciful possibility that the WCA does not preempt Plaintiff's IIED claim against Alvarado.

Although McLane has met its burden to show that the amount in controversy exceeds $75,000, the Court finds it possible that Plaintiff may state a cognizable IIED claim against Alvarado. Accordingly, the Court cannot conclude Alvarado has been fraudulently joined and thus his citizenship must be considered. Because Plaintiff and Alvarado are both citizens of California, the Court lacks jurisdiction under 28 U.S.C. § 1332. The Court therefore recommends this action be remanded to the Merced County Superior Court.

///

///

///

# IV.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion to remand (ECF No. 14) be GRANTED; and

2. The action be REMANDED to Merced County Superior Court for lack of subject matter jurisdiction.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 27, 2024**

UNITED STATES MAGISTRATE JUDGE